**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ARTURO BRITO-GONCALVEZ,

      Petitioner,

                              Case No. 1:26-cv-94

      v.

                              JUDGE DOUGLAS R. COLE

FIELD OFFICE DIRECTOR,
                              Magistrate Judge Bowman
DETROIT FIELD OFFICE,
IMMIGRATION AND CUSTOMS
ENFORCEMENT,

      Respondent.

<u>**OPINION AND ORDER**</u>

U.S. Immigration and Customs Enforcement (ICE) is currently detaining Petitioner Arturo Brito-Goncalvez, a Venezuelan citizen. Brito-Goncalvez filed a Petition for Writ of Habeas Corpus (Doc. 1), requesting that the Court order his release or order a new bond hearing. For the reasons below, the Court **DENIES** the Petition (Doc. 1) **WITHOUT PREJUDICE**.

**BACKGROUND**

The Court has ruled on numerous petitions like this one in recent months. *See, e.g., Coronado v. Sec'y, Dep't of Homeland Sec.*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025); *Masis Lucero v. Field Office Dir. of Enf't & Removal Operations*, No. 1:25-cv-823, 2025 WL 3718730 (S.D. Ohio Dec. 23, 2025); *Phurtskhvanidze v. Field Office Dir. of Enf't & Removal Operations*, No. 1:25-cv-827, 2026 WL 160833 (S.D. Ohio Jan. 21, 2026); *Alcan v. Sec'y of U.S. Dep't of Homeland Sec.*, No. 1:25-cv-961, 2026 WL 472333 (S.D. Ohio Feb. 19, 2026). Generally, these

cases have turned on two questions: (1) whether the petitioner is detained under 8 U.S.C. § 1225(b)(2) (which provides for mandatory detention pending removal proceedings) or instead 8 U.S.C. § 1226(a) (which provides for discretionary detention), and (2) whether a petitioner's detention under the former provision amounts to a due process violation. *See, e.g.*, *Coronado*, 2025 WL 3628229, at *6, 12. The Court has taken the position that petitioners like the ones in the above-mentioned cases are properly detained under § 1225(b)(2) as a matter of statutory interpretation, and that detention under the provision does not violate due process (although it has, consistent with the Supreme Court's case law, held open the possibility that due process concerns may arise should any given petitioner's period of detention become unreasonably long). *Id.*; *Masis Lucero*, 2025 WL 3718730, at *6. And the Fifth and the Eighth Circuits have since come to the same conclusion that the Court did on the statutory interpretation question.[1] *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). The Sixth Circuit, meanwhile, has heard argument on the issue, but has yet to issue a decision. (*See* Case Argued, *Lopez-Campos v. Raycraft, et al.*, No. 25-1965 (6th Cir. Mar. 18, 2026), Doc. 42).

This case involves a different, but related, provision of law: § 1225(b)(1). To see why, start with the facts in the record. On September 26, 2023, Brito-Goncalvez allegedly "applied for admission into the United States at the Miami International

---

[1] Admittedly, the Seventh Circuit has articulated the contrary view, albeit in a slightly different context. *See Catstañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–62 (7th Cir. 2025).

Airport with his valid B1/B2 nonimmigrant visa."[2] (Doc. 1, #8). But, instead of admitting Brito-Goncalvez as he requested, U.S. Customs and Border Protection (CBP) "determined he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I)."[3] (*Id.*). That provision states that "any immigrant at the time of application for admission … who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required … is inadmissible." 8 U.S.C. § 1182(a)(7)(A)(i). As a result, the government placed Brito-Goncalvez into expedited removal proceedings under 8 U.S.C. § 1225(b)(1)(A)(i). (Doc. 6-3 (expedited removal order)).

But, in a sworn statement to a CBP officer, Brito-Goncalvez "expressed a fear of returning to Venezuela." (Doc. 1, #8). So the government transferred Brito-Goncalvez to a Florida facility for a "credible fear interview" under 8 U.S.C. § 1225(b)(1)(A)(ii). (*Id.*). And at that interview, Brito-Goncalvez "established a credible fear of persecution in Venezuela based on his political opinion." (*Id.*). Following the interview, on October 12, 2023, the government issued Brito-Goncalvez a Notice to Appear (NTA) and initiated full removal proceedings under 8 U.S.C.

---

[2] The record does not clearly disclose what happened with the visa that Brito-Goncalvez allegedly possessed. The Petition states that CBP "revoke[d]" the visa, (Doc. 1, #8), while the government's Return simply says that Brito-Goncalvez "was not admitted as a B-2 nonimmigrant as he requested," (Doc. 6, #323 n.1 (emphasis omitted)).

[3] The Notice to Appear also charged Brito-Goncalvez with a violation of 8 U.S.C. 1182(a)(6)(C)(ii), (Doc. 6-1, #333), but the government later withdrew that charge, (Doc. 6-7, #347 (additional charges of inadmissibility/deportability)).

§ 1229a. (*Id.* at #9; Doc. 6-1, #333 (NTA)). Shortly thereafter, on October 28, 2023, ICE paroled him out of detention under 8 U.S.C. § 1182(d)(5)(A), at which point Brito-Goncalvez moved to Columbus, Ohio, "to live with his immediate family." (Doc. 1, #9; Doc. 6-4 (parole notice)). Since then, Brito-Goncalvez has filed an asylum application,[4] obtained a work permit, attended regular check-in appointments with ICE, procured gainful employment, filed federal income taxes, and "developed community ties." (Doc. 1, #9). But at a December 17, 2025, check-in appointment, ICE nonetheless detained Brito-Goncalvez. (*Id.*). Once detained, ICE placed Brito-Goncalvez in the custody of the Butler County Jail. (*Id.* at #10). Brito-Goncalvez moved for release on bond, which the immigration judge denied on the ground that he lacked jurisdiction to make a custody redetermination. (*Id.*; Doc. 6-5 (bond order)). The immigration judge also noted, however, that "if a reviewing Court would determine that this Court does have the authority to redetermine bond, the Court would set a $25,000 bond in this case." (Doc. 1, #10; Doc. 6-5, #343).

Brito-Goncalvez's petition asserts three claims for relief, one statutory and two constitutional: (1) civil detention in violation of the INA, (2) civil detention in violation of due process, and (3) *re*-detention in violation of due process. (Doc. 1, #25–26). Respondent has filed a Return of Writ (Doc. 6), and Brito-Goncalvez has filed a Traverse (Doc. 8). So the matter is ripe for review.

---

[4] Brito-Goncalvez was scheduled for an individual hearing with an immigration judge on March 9, 2026. (Notice, Doc. 9, #371). But that hearing has been rescheduled, and, after initially being reset for April 1, 2026, (*id.*), will take place on April 24, 2026, (Notice, Doc. 10, #376).

## LAW AND ANALYSIS

### A. Brito-Goncalvez is Properly Detained Under 8 U.S.C. § 1225(b)(1)(B)(ii) as a Matter of Statutory Interpretation.

Start with the statutory question. As Brito-Goncalvez's Traverse acknowledges, his Petition reflects some uncertainty about the statutory provision at issue here. (Doc. 8, #360). Specifically, at the time of filing, it was unclear to him whether ICE was detaining him under § 1225(b)(1)(B)(ii) or § 1225(b)(2)(A). (*Id.*). But the parties now agree that Brito-Goncalvez is detained under § 1225(b)(1)(B)(ii), so he "foregoes any further argument regarding § 1225(b)(2)(A)." (*Id.* at #361). The Court agrees with the parties' conclusion on this question of statutory interpretation, and it briefly explains why.[5]

The government determined that Brito-Goncalvez, an "applicant for admission" within the meaning of § 1225(a)(1), is inadmissible under § 1182(a)(7)(A)(i)(I) because he allegedly lacked proper documentation. (Doc. 1, #8; Doc. 6-1, #333). As a result, § 1225(b)(1) governs his case. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (citing 8 U.S.C. § 1225(b)(1)(A)(i)) ("Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation."). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further hearing or review' pursuant to an

---

[5] The government's Return seems to contradict itself on this point. (*Contrast* Doc. 6, #323 ("His petition must be denied as Petitioner is an 'applicant for admission,' and he is thus subject to detention under 8 U.S.C. § 1225(b)(1)(B)(ii)."), *with id.* at #329 n.3 (presenting the argument under "Section 1225(b)(1)" as an argument in the alternative)). Nonetheless, it appears to the Court that the government's considered position is that Brito-Goncalvez is detained under § 1225(b)(1)(B)(ii), for the reasons explained further in this section.

expedited removal process." *Id.* (citing 8 U.S.C. § 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum … or a fear of persecution,' then that alien is referred for an asylum interview." *Id.* (quoting § 1225(b)(1)(A)(ii)). And "[i]f an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Id.* (quoting § 1225(b)(1)(B)(ii)). "By regulation, that 'further consideration' takes the form of full removal proceedings under section 240 of the Act. Thus, if an alien originally placed in expedited removal establishes a credible fear, he receives a full hearing before an immigration judge." *Matter of M-S*, 27 I&N Dec. 509, 512 (A.G. 2019) (citing 8 C.F.R. §§ 208.30(f), 1208.30(g)(2)(iv)(B)).

That's what happened here. Brito-Goncalvez established a credible fear of persecution in Venezuela after initially being placed on the expedited-removal track. (Doc. 1, #8). So his asylum claim is now being considered in the context of the "full removal proceedings" that the government has initiated against him. *Matter of M-S*, 27 I&N Dec. at 512. And, under the INA, he "shall be detained" until his asylum claim is adjudicated, with no bond eligibility. 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings*, 583 U.S. at 299 ("The plain meaning of [§ 1225(b)(1)(B)(ii)] is that detention must continue until immigration officers have finished 'consider[ing]' the application for asylum."); *Matter of M-S*, 27 I&N Dec. at 515 (holding that aliens who are transferred from expedited proceedings after establishing a credible fear "remain ineligible for bond, whether they are arriving at the border or are apprehended in the United States").

6

So, as a matter of statutory interpretation, Brito-Goncalvez's detention under § 1225(b)(1)(B)(ii) is proper.

Brito-Goncalvez's parole under 8 U.S.C. § 1182(d)(5)(A) does not change this result. That provision permits the Secretary of Homeland Security "in his discretion [to] parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Importantly, though, that parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.* Additionally, Brito-Goncalvez's "Interim Notice Authorizing Parole" expressly states that his parole authorization was "valid for one year." (Doc. 6-4, #342). It also states that Brito-Goncalvez's parole would "automatically terminate … at the end of the one-year period unless ICE provides [him] with an extension at its discretion." (*Id.*). And there is nothing in the record to suggest that ICE granted that extension by the time he was detained on December 17, 2025—more than one year after the issuance of the parole notice. So Brito-Goncalvez is now "returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). The parties are therefore

7

correct in their joint position that § 1225(b)(1)(B)(ii), rather than § 1225(b)(2)(A), controls this case. And under that provision, the government has authority to, indeed is required to, detain Brito-Goncalvez.

**B.    Brito-Goncalvez's Detention Does Not Violate Due Process.**

With the statutory question addressed, the Court now turns to Brito-Goncalvez's remaining due process claims. His second claim for relief—a due process violation stemming from his detention—fails for the same reason the Court has previously rejected similar due process challenges. While *Jennings* holds open the possibility of a due process challenge to detention pending removal proceedings, its rejection of an implicit six-month limitation on detention strongly suggests that detention would have to go on for some time before due process concerns begin to emerge. 583 U.S. at 298, 314. And, as the Court has previously explained, that conclusion finds further support in the Sixth Circuit's decision in *Hamama v. Adducci. See* 946 F.3d 875, 879 (6th Cir. 2020) ("*Jennings* restored the constitutional distinction between pre- and post-removal order detention that [the Sixth Circuit's decision in *Ly v. Hansen*, 351 F.3d 263 (6th Cir. 2003)] collapsed."). So the Court rejects Brito-Goncalvez's due process challenge to his detention.

For similar reasons, the Court rejects Brito-Goncalvez's third claim for relief: a due process challenge to his *re*-detention. In support of its position on this issue, the government's Return cites this Court's decision in *Phurtskhvanidze*, which held that the re-detention of an alien following a release on the alien's own recognizance did not violate due process. 2026 WL 160833, at \*2. Brito-Goncalvez's Traverse offers two

8

points in response. First, Brito-Goncalvez says that granting parole required ICE to determine that he "presents neither a security risk nor a risk of absconding." (Doc. 8, #362 (cleaned up) (quoting 8 C.F.R. § 212.5)). According to Brito-Goncalvez, that finding "provided [him] a far weightier liberty interest than that of a § 12[2]6(a) release on recognizance." (*Id.* (citation omitted)). And second, he says that, "there was no government change of policy in this case, as was the case in *Phurtskhvanidze*." (*Id.* at #363).

The Court rejects both arguments. First, the Court cannot see how the mere fact that ICE deemed Brito-Goncalvez neither a security risk nor a risk of absconding provides him with "a far weightier liberty interest" than that of an alien released on recognizance. (*Id.* at #362). Indeed, if anything, the notice that Brito-Goncalvez received and the statute under which he was paroled suggest otherwise. The parole notice expressly states that Brito-Goncalvez's parole would expire at the end of a one-year period "unless ICE provide[d] [him] with an extension *at its discretion*." (Doc. 6-4, #342 (emphasis added)). The notice goes out of its way to inform the recipient that "[p]arole is entirely within the discretion of ICE and can be terminated *at any time and for any reason*. Your parole is not valid for work authorization and is not an admission in lawful status." (*Id.* (emphasis added)). Likewise, § 1182(d)(5)(A) provides that parole "shall not be regarded as an admission," and that when the purpose of the parole has been served "in the opinion of the Secretary of Homeland Security," "the alien shall forthwith return or be returned to the custody from which he was paroled." In other words, unlike the petitioner in *Phurtskhvanidze*, Brito-

9

Goncalvez actually had *notice* that his parole was discretionary. As the Court has explained, it agrees that "[Brito-Goncalvez] and other like-petitioners have a liberty interest in remaining free from detention." *Phurtskhvanidze*, 2026 WL 160833, at *2. But how the circumstances here give rise to a "weightier" liberty interest than the one at issue in *Phurtskhvanidze* is not clear to the Court.

Second, that the government detained Brito-Goncalvez for reasons that have nothing to do with an internal policy change is beside the point. In *Phurtskhvanidze*, the government revoked the petitioner's bond (which was granted under § 1226(a)) because, consistent with a policy change at DHS, the government detained the petitioner under § 1225(b)(2). 2026 WL 160833, at *1. As the Court explained in rejecting the petitioner's due process challenge, "[t]hat Phurtskhvanidze was granted rights under one statutory provision does not mean that *other* provisions of the code cannot be enforced against him, so long as those provisions lawfully apply." *Id.* at *2. But that statement does not mean that an alien's due process challenge to detention pending removal proceedings is *stronger* where there is no analogous policy change. The point in *Phurtskhvanidze* was simply that the mere fact of a policy change resulting in unforeseen detention does not amount to a due process violation, so long as the policy change itself is lawful. So the Court rejects this argument, too.

Finally, the Court briefly addresses an argument that straddles both of Brito-Goncalvez's due process claims. Consistent with the Court's previous opinions in similar cases, the government's Return treats Brito-Goncalvez's due process claims

10

as duration-based. (*See* Doc. 6, #329). But in Brito-Goncalvez's view, that's a mistake.

He says that he:

> is not making a prolonged detention claim under *Zadvydas*. Instead, [Brito-Goncalvez] alleges that his re-detention and continued detention, without first providing a pre-deprivation hearing or an opportunity to seek a full and fair custody redetermination hearing before an immigration judge, violates his substantive and procedural due process rights as applied to him, notwithstanding the fact that § 1225(b)(1)(B)(ii) provides for his mandatory detention on its face.

(Doc. 8, #362).

The difficulty with this argument is that the Supreme Court has long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see, e.g.*, *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation."); *Zadvydas v. Davis*, 533 U.S. 678, 711 (2001) (Kennedy, J., dissenting) (citing *Wong Wing*, 163 U.S. at 235) ("Congress' power to detain aliens in connection with removal or exclusion, the Court has said, is part of the Legislature's considerable authority over immigration matters."). So to the extent that Brito-Goncalvez contends that the Court should conduct a non-duration-based, free-standing due process inquiry into his detention under the balancing test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Court struggles to see how that analysis squares with the Supreme Court's statements on this matter. *But see, e.g.*, *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 931–35 (S.D. Ohio 2026) (granting habeas relief under *Mathews* on similar facts).

11

\*　　\*　　\*

In sum, the Court will **DENY** the Petition for Writ of Habeas Corpus (Doc. 1). But, as it has done in the past, in dismissing this Petition, the Court notes it is not passing on the wisdom of mandatory detention in this context. It is Congress, not this Court, that is tasked with making those policy determinations, subject only to constitutional limitations. And the Court concludes that Congress has spoken on the topic through the plain language of § 1225(b)(1). Of course, Congress remains free to revisit the language of that statute at any time, should it wish to do so. But absent that, or different instruction from the Sixth Circuit, the Court finds that the statutory mandatory detention command under § 1225(b)(1)(B)(ii) applies.

That said, statutory commands must also conform with the Constitution. And the Court acknowledges that, if Brito-Goncalvez's pre-removal detention goes on too long, due-process concerns may well arise. His current detention, though, has been roughly 100 days, and that is insufficient to trigger such concerns. So the constitutional limits on the maximum permissible duration of such detention is a question for another day. Having said that, in connection with dismissing this action, the Court **ORDERS** the government to provide this Court and Brito-Goncalvez's counsel in writing, within fourteen (14) days, its best current estimate as to when a determination on the question of Brito-Goncalvez's removal will be administratively final. Once the government has provided that information, the Court, as noted above, will dismiss this petition without prejudice.

12

## CONCLUSION

The Court **DENIES** Brito-Goncalvez's Petition for Writ of Habeas Corpus (Doc. 1) and **ORDERS** the government to provide this Court and Brito-Goncalvez's counsel in writing, within fourteen (14) days, its best current estimate as to when a determination on the question of Brito-Goncalvez's removal will be administratively final. Once the government has provided that information, the Court, as noted above, will dismiss this petition without prejudice.

**SO ORDERED.**

April 21, 2026
 **DATE**                                                   **DOUGLAS R. COLE**
                                                           **UNITED STATES DISTRICT JUDGE**